GEORGE POETER, petitioner,

*v.*

ANNA POETER, defendant.

[Decided October 11th, 1937.]

*Messrs. Eisenstein & Eisenstein,* for the petitioner.

*Mr. Abe D. Levenson* (*Levenson, Comen & Levenson*), for the defendant.

VAN WINKLE, A. M.

I am asked to advise an order annulling past-due alimony, and past-due maintenance for a child of the parties, both provided in an order duly made, pending this suit for divorce, under section 25 of our Divorce act, on the ground that the husband cannot pay these past-due sums. The application comes really in answer to a motion to have the husband adjudged to be in contempt for failure to comply with the order.

I must deny the application.

The jurisdiction of the court of chancery in matters of alimony in divorce suits is purely statutory. Alimony may be awarded *pending* a suit for divorce or nullity of marriage, or *after* a decree of divorce, under section 25 of the Divorce act of 1907 (*Comp. Stat., p.* 2021) which section I quote in full that I may the more clearly show the reasons for my decision:

"Pending a suit for divorce or nullity, or after decree of divorce, it shall be lawful for the court of chancery to make such order touching the alimony of the wife, and also touching the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall be rendered fit, reasonable and just, and to require reasonable security for the due observance of such orders, and upon neglect or refusal to give such reasonable security, as shall be required, or upon default in complying with the order, to award and issue process for the immediate sequestration of the personal estate, and the rents and profits of the real estate of the party so charged, and to appoint a receiver thereof, and cause such personal estate and the rents and profits of such real estate, or so much thereof as shall be necessary, to be applied toward such alimony and maintenance as to the said court shall from time to time seem reasonable and just, or to enforce the performance of the said orders by such other lawful ways and means as is usual, and according to the course and practice of the court of chancery; orders so made may be revised and altered by the court from time to time as circumstances may require."

This section was left unchanged through all the years until 1933, when it was amended, but only to provide with respect to the remarriage of a wife subsequently to a decree. *P. L. 1933 p. 296; N. J. Stat. Annual 1933 p. 124 § 62-25.*

Our Divorce act of 1907 is "the Uniform Divorce act." See *Thompson* v. *Thompson, 89 N. J. Eq. 70* (at *p. 74*) ; *103 Atl Rep. 856.* Unfortunately, this Uniform act has been adopted in only a few states, for it was drafted as the fruit of tentative drafts and many conferences, and it represents the experience and judgment of a select body of lawyers chosen from every part of the country. Dean Pound wrote an article in 1908 (*21 Harvard Law Review 405*) in which he asked this rhetorical question, "are any judicial decisions more deliberately worked out or more carefully adjusted to the circumstances to which they are to be applied than the draft acts proposed by the conference of commissioners on uniform state laws, or the national congress on divorce legislation?"

One who is familiar with the subject of alimony sees that section 25 of our Divorce act itself reveals that it was drafted by lawyers who knew that a proceeding for alimony in a divorce suit is not an essential part of the cause of action for divorce; that such a proceeding is "collateral" to the issue of divorce (*2 Bishop (6th ed.) 487*) ; that an alimony proceeding is merely "an appendage" of the action for divorce

(*Ibid. 351*); that, as decided in the famous case of *Forest* v. *Forest, 20 N. Y. 501,* "alimony is a mere incident of the judgment of divorce;" that proceedings for divorce and for alimony are distinct, although they may be proceeding coincidentally. (*Sutphen* v. *Sutphen, 103 N. J. Eq. 203; 142 Atl. Rep. 817; Noel* v. *Noel, 15 N. J. Mis. R. 576; 193 Atl. Rep. 558*); that a proceeding for alimony is a proceeding for a judgment, which is a judgment separate from the judgment of divorce; that the proceeding for alimony has nothing to do with the final judgment in the action for divorce; and that an order for alimony made pending suit for divorce has no relation to the subsequent decision of, or decree on, the issue of divorce, except that payments provided to be made by an order for alimony made pending suit terminate when the final decree of divorce is entered.

The words of section 25 plainly tell us that any order touching the alimony of a wife, and also any order touching the maintenance of a child, where there is pending a suit for divorce, may be enforced not only by sequestration, but also "by such other lawful ways and means as is usual and according to the course and practice of the court of chancery;" and this includes enforcement by execution, because section 44 of the Chancery act (*Comp. Stat. p. 425*) provides as follows:

"The decree of the court of chancery shall, from the time of its being signed, have the force, operation and effect of a judgment at law in the supreme court, from the time of the actual entry of such judgment: and all decrees and orders of the court of chancery, whereby any sum of money shall be ordered to be paid by one person to another, shall have the force, operation and effect of a judgment at law in the supreme court, from the time of the actual entry of such judgment, and the chancellor may order such executions thereon as in other cases."

The chancellor made it clear in *White* v. *White, 94 N. J. Eq. 278; 120 Atl. Rep. 419,* that the supplement to "*An act respecting any execution,*" enacted in 1916 (*P. L. 1916 ch. 113 p. 242; Cum. Supp. Comp. Stat. 1911-1924 p. 1207 § 71-9 l*) which provides for an installment execution, applies to *orders* of the court of chancery whereby any sum of money

shall be ordered to be paid by one person to another, as well as to decrees in chancery. The chancellor stressed this, and emphasized his meaning by the use of italics. His decision is an interpretation of section 44 of the Chancery act, as well as of the 1916 supplement to the Execution act just referred to.

I, myself, have never doubted that there was a vested right in sums past due under an order for alimony or an order for the maintenance of a child, which order happened to be included in a decree of divorce, or which was made after a decree of divorce, in time; nor have I had any doubt that a subsequent order of modification cannot operate retroactively to disturb such vested right. Any doubts that may have been held are now removed by the decision in *Hatch* v. *Hatch, 15 N. J. Mis. R. 461; 192 Atl. Rep. 241,* where Advisory Master Herr declared that on a consideration of the court's power to modify orders for alimony made in divorce suits, "the answer must be found in section 25 of the Divorce act, and the construction to be given to that section." And I note in this decision by Advisory Master Herr that the vested character of accrued "permanent" alimony, that is, alimony provided *after* a decree of divorce has been recognized by Advisory Master Child in an unreported decision (*Spahn* v. *Spahn*—Docket 56-57), by Advisory Master Campbell in *Williams* v. *Williams, 12 N. J. Mis. R. 641, 644; 174 Atl. Rep. 423,* and by Advisory Master Grosman in *Flavell* v. *Flavell, 15 N. J. Mis. R. 167, 176; 189 Atl. Rep. 639.* It should be said here that *Wilson* v. *Wilson, 14 N. J. Mis. R. 33; 181 Atl. Rep. 257,* was a *maintenance* suit brought under section 26 of our Divorce act, and that what Advisory Master Herr said in deciding that case concerning the inherent power of this court is not pertinent in the consideration of the order I am dealing with, which order was made under section 25 of our Divorce act. The court has no inherent jurisdiction to grant alimony in a divorce suit. *Wigdor* v. *Wigdor, 14 N. J. Mis. R. 880; 188 Atl. Rep. 235.*

Virtually all that I have to say applies with equal force to an order for the maintenance of a child pending a divorce suit, as well as to an order for alimony provided for a wife

pending a divorce suit, and the conclusion is the same, although I may not again herein specifically refer to an order for the maintenance of a child, with the purpose of not unduly extending these conclusions.

A proceeding for alimony pending a suit for divorce, while based upon the pendency of the action for divorce, is independent of the cause of action for divorce. The proceeding is initiated by a petition which raises an issue separate from and independent of the issue of divorce, and this issue is decided on proof special to this issue. As Vice-Chancellor Backes pointed out in *Swallow* v. *Swallow, 84 N. J. Eq. 109* (at *p. 111*) ; *92 Atl. Rep. 872*, the petitioner usually alleges that she is destitute of the means of supporting herself pending the suit, and she prays that the husband be required to pay her a proper allowance for her support and maintenance "until the termination of this suit." The application may be heard orally or by affidavits. The issue is a narrow one; and usually it may properly be decided on affidavits, where affidavits are submitted and no request is made for an oral hearing. See *Sulphen* v. *Sulphen, supra; Cropsey* v. *Cropsey, 104 N. J. Eq. 187; 144 Atl. Rep. 621.* The application is not for any relief in connection with the final judgment in the action for divorce. The application does not need, and it cannot get, any support from, nor can it give any support to, the decree of divorce, on the cause of action for divorce, in any interlocutory way.

The court manifests its adjudication of the separate issue by an order which is positive, and not at all provisional, which directs the unconditional payment of money, usually by the husband to the wife, and she may be either the defendant or the petitioner. This order to pay is a judgment which may be enforced by execution. This order is in no way preliminary to, or a step towards, a decree of divorce, and it settles nothing whatever respecting the cause of action for divorce. Indeed, the issue of alimony raised by the petition may be, and often is, decided against the party to the suit in whose favor a decree for divorce afterwards is made. The order may be executed, even if there is no decree in the action

for divorce; or it may be executed after the final decree in the action for divorce is entered, or even if the action for divorce is dismissed, or the wife in whose favor the order was made be adjudged guilty in the divorce suit. See *Swallow* v. *Swallow, supra.*

Vice-Chancellor Buchanan saw all this clearly when he was deciding *Sulphen* v. *Sulphen, supra,* but he expressed himself only to the extent appropriate to a consideration of the facts of the case before him, when he said: "The wife is not necessarily entitled to alimony merely because of bringing the suit or because of obtaining a decree of divorce. Whether or not a wife, even if successful in obtaining a decree of divorce, is entitled to decree for permanent alimony, and if so, for what amount, is an issue separate and distinct from the issue as to the divorce, and involving for its determination matters of evidence different from, or at least additional to, the evidence required for the determination of the divorce issue * * *. All that has been said as to the right or claim to permanent alimony applies equally to the right or claim to temporary alimony" * * *.

To begin with, a husband owes his wife a duty of support. If there is a divorce suit pending, brought by either against the other, the wife comes into court with an application to enforce this existing duty pending the suit. Unless there be exceptional circumstances, the court orders the husband to pay to the wife a specified amount of money, usually an amount to be paid weekly. This specified weekly sum vests weekly. If it did not the court's order would not only be an empty performance, but there would be a failure, an extinguishment, of the duty of support, and a sanctioning of such failure or extinguishment by the court. The court cannot take away the performance of this existing and continuing duty, which by its order it has found to exist, and the amount of which it has fixed, until it further finds that the duty does not exist. The performance of the duty may be afterwards fixed by the court at a different amount. The termination of the duty, or the amount to be paid in performance of the duty, may be evidenced by the further order of the court.

The order of the court to pay is an adjudication by the court translating the duty into a specified command by the court. At the first or at the end of each week, as the case may be, there arises an obligation on the part of the husband to pay the specified weekly amount. On the first or at the end of each week, as the case may be, the husband owes the weekly amount specified as a performance of the duty of support which had existed, but which had, before the order was made, not been fixed at any specific sum.

An order for alimony made *pending* a suit for divorce and an order made *after* a decree of divorce are not legally distinguishable in any way. As to both, the jurisdiction of the court comes alone from section 25 of our Divorce act; they have the same nature and purpose, that is to say, the support of the wife under the husband's continuing duty of support; and the orders may be enforced in the same way, that is, by executions. The court's continuous power to modify both is the same. A decree of divorce in the suit for divorce does not raise any difference. All that the decree of divorce does is to terminate the payments, so that no payments become due after the entry of the decree.

An order for alimony made *after* a decree does not necessarily belong in the decree, for it is no part of the decree on the cause of action for divorce. A provision for alimony is often placed in the divorce decree *nisi,* for convenience, so to speak, but the order is still only "an order touching the alimony of the wife." The placing of this order in the decree of divorce does not make the decree of divorce a decree for alimony. Sometimes a decree of divorce is silent as to alimony, and an order for alimony is actually made *after* the decree, that is, after, in time, by a separate paper which evidences itself outside of the decree of divorce, and which has no relation to the decree of divorce, except only that it is made *after* the decree of divorce, in accordance with section 25 of our Divorce act.

All orders for alimony, whether made *pending* the suit for divorce or *after* the decree of divorce—and they can be made at no other times—are based on the same concept, that is to

say, the enforcement of the continuing duty of the husband to support his wife, of which duty he is not permitted to absolve himself by his own conduct, although that conduct results in a dissolution of the marriage.

An order for alimony made *pending* a suit for divorce, and also an order made *after* a decree of divorce, both run until the further order of the court, whether they be so expressed or not. An order for alimony made *pending* a suit is terminated on the entry of the divorce decree *nisi,* if an order for alimony is included therein, or, if an order for alimony is not so included, and no order for alimony is made after the divorce decree *nisi* is made, the order for alimony made pending suit terminates on the entry of the final decree, that is to say, on the termination of the suit; but its "vitality," to use the well chosen and self-explanatory word used by Vice-Chancellor Backes in *Swallow* v. *Swallow, supra,* for the enforcement of sums past due, survives the decree, for such sums are vested.

Section 25 of our Divorce act does not provide for a "decree" for alimony. We see that alimony, provided *pending* a suit for divorce, or *after* a decree of divorce, are alike provided by an "order." I say this, because often we hear an order which has been made *after* a decree of divorce, which happens to be included in a decree of divorce, spoken of as a "permanent" order, or as a "decree" for alimony, and the alimony provided by such an order as "permanent" alimony. We should notice that these words are used only for easy or short reference, and to save the use of more words. The use of the words "decree" and "permanent," as applied to an order for alimony made *after* a decree of divorce, have suggested the notion that such an order has more potency, that it is something of a higher degree, than an order for alimony made *pending* a suit for divorce. This notion includes the assumption, which is clearly fallacious, that an order for alimony made *pending* a suit for divorce is only an "interlocutory" order. Really, the only "permanent" thing about it all is the court's continuous power to modify any order for alimony, no matter when made, as to the future.

An order for alimony made pending a suit for divorce is not an interlocutory order which falls with a decree on the cause of action for divorce. An interlocutory order, generally speaking, is not appealable by or through itself, and sometimes it is not reviewable through the decree in the suit in which it was made when such decree is appealed. But in New Jersey, an order for alimony made *pending* a suit for divorce is appealable, and it may be enforced as a final order by an execution. Section 44 of the Chancery act gives such an order itself "the force, operation and effect of a judgment at law." An interlocutory order is one which is designed "to prepare the case for final decree;" or, expressed differently, it is "an order made before final decree, and for the purpose of ascertaining matter of law or fact preparatory to final decree." Manifestly, an order for alimony made under section 25 pending a suit for divorce may not be so classified. An order for alimony made pending a suit for divorce comes, in time, before a decree of divorce, but, surely, this is not sufficient reason for naming such an order "interlocutory," in a legal sense.

The decisions in the states—and I think these states are in the minority—which hold that sums past due under an order for alimony made *pendente lite* are not vested, proceed either on an interpretation of statutes to that effect, or on an argument based on the erroneous premise that such an order is merely "interlocutory." But I have not seen any case in any state so holding, nor would I expect to find one, where an execution may be issued on the order.

The "propriety" or the "finality" of a decree of divorce is not called in question by an application for modification of the order for payment of alimony which happens to be contained in the decree. The decree itself, as a decree on the cause of action for divorce, remains undisturbed, both as to propriety and finality, after a modification of such order for alimony.

Several times I have had New York decisions on alimony shortly cited to me by counsel on motion days, without any accompanying reference to the New York statutes under which the decisions were made. In New York, alimony pro-

vided after a decree of divorce may be docketed as a judgment. Paragraph 504, New York Civil Practice act. Alimony provided pending a suit for divorce is provided for in paragraphs of the New York Civil Practice act, other than the paragraphs relating to alimony provided after a decree of divorce (paragraphs 1169, 1171, 1171a, 1172), and these paragraphs specify that contempt and sequestration are the remedies for the enforcement of alimony provided pending a suit for divorce. The New York courts have construed these paragraphs as not authorizing the issuance of an execution; and so they have held, in substance, that alimony past due under an order *pendente lite* is not vested; they have held that they should not, by implication, read the right to issue executions into the paragraphs providing for alimony *pendente lite*. But as to this, in what I think is the most recent appellate division case on the subject (*Doncourt* v. *Doncourt, 281 N. Y. Supp. 535;* App. Div., June 20th, 1935), a judge dissented, evidently thinking that an execution might be issued.

A consideration of New York decisions cannot help us in the interpretation of section 25 of our own Divorce act; and I cannot help saying that the earlier New York decisions on the subject of alimony *pendente lite* are unsatisfactory. There have been dissenting opinions, and opinions that the judges themselves have said could not be reconciled. One appellate division judge declared that he did not "willingly" follow a preceding decision, because it was a wrong decision. The early New York case that perhaps stands out most, so far as citing in other jurisdictions is concerned, is *Shepard* v. *Shepard, 99 App. Div. 309,* where the precise question under discussion here was flatly before the court, and it was held, by a unanimous court, that alimony due under a New York order for alimony *pendente lite* is a fixed sum due and payable, and that a termination of the action does not.discharge the payment of past-due alimony. However, neither the early nor the later New York decisions on the subject of alimony should be shortly cited in New Jersey, when we are considering the subject of alimony under section 25 of our Divorce act.

The statute of Rhode Island relating to alimony *pendente lite* is similar to the provisions of section 25 of our Divorce act and section 44 of our Chancery act, but it contains a provision, not only that the court "may make all necessary orders and decrees concerning the same, and may at any time alter or amend" the order, but that it may "*annul* the order for sufficient cause." (Italics mine.) Yet the Rhode Island courts have decided that an allowance for alimony awarded *pendente lite* in a divorce suit is not to be altered by the court unless the former order of allowance should be vacated for fraud, or some other reason which would warrant the annulling of a judgment; and that there may be no retroactive order annulling past-due alimony. See *Harvey* v. *Harvey, 45 R. I. 383; Rose* v. *Rose, 49 R. I. 64.*

An order for alimony *pendente lite* was involved in *Levine* v. *Levine (Ore.), 187 Pac. Rep. 609,* where it was held that the order was a final judgment. One phase of the notorious and thoroughly-contested Sharon litigation is reported in *Sharon* v. *Sharon, 7 Pac. Rep. 456; 67 Cal. 185,* where we find the court holding that an order for the payment of alimony and counsel fee was in the nature of a final judgment. "It possesses all the essential elements of a final judgment. Nothing remains to be done except to enforce it. Although the pendency of the action for divorce constituted the basis for the order, it was no part of the relief demanded by the plaintiff. She might at any time during the pendency of the action have applied to the court for such an order, and if granted it would not be affected by subsequent proceedings in the action. Its validity would not depend in any way on the results of the action. If the court had afterwards found that the marriage relation never existed between the parties that would not have affected the order for the payment of temporary alimony. It was to all intents and purposes a final judgment entered in the action quite as much as the decree of divorce in the case."

An order for alimony *pendente lite* was involved in *Daniels* v. *Daniels, 10 Pac. Rep. 657,* where the court held that a judgment that is conclusive of any question in the case is

final as to that question, and the order for alimony *pendente lite* was held to be to all legal intents and purposes a final judgment. "The order to pay was a positive one. * * * it has the effect of an unsatisfied judgment. * * * It is not vitally important in such a situation as that here presented what terms are used to describe the court's decision upon an application for temporary alimony, whether it is called an order or a judgment, interlocutory, or final. In the present instance the language employed showed the essential character intended. * * * The obligation thus created had the effect of a judgment. The litigation having ended without its being set aside, it retained its vitality. Its force was not impaired merely because the debtor had ignored it and execution had not been issued." See *Paul* v. *Paul, 121 Kan. 88; Hobbs* v. *Hobbs, 82 Col. 190; 210 Pac. Rep. 398; Blackburn* v. *Blackburn, 198 Ky. 12; 247 S. W. Rep. 1111; Robbins* v. *Mulcrey, County Clerk (Cal.), 281 Pac. Rep. 668; Ex parte Robbins (Cal.), 212 Cal. 534; 299 Pac. Rep. 51; Biltmore* v. *Superior Court (Cal.), 281 Pac. Rep. 710; Raines* v. *Raines (Ga.), 76 S. E. Rep. 51; Gorham* v. *Gorham (Ga.), 94 S. E. Rep. 555; Caldwell* v. *Caldwell (N. C.), 189 N. C.; 128 S. E. Rep. 329; Barney* v. *Barney (Iowa), 14 Iowa 189.* These cases are authorities in the respective states of their decision for the proposition that an order for alimony *pendente lite* in an action for divorce is final, and so gives vested rights; but, of course, the decisions are to be considered in connection with the statutes of the respective states.

One of these other-state decisions, cited in the preceding paragraph hereof, holds that where the court directs the payment of sums of money, *pendente lite,* as a performance of the duty of the husband to support the wife, the duty is owed not only to the wife, but also to the public. The opinion does not explain this statement in any way, but I should say that, apparently, the court had in mind the "triangular" characteristics of a divorce suit, and that the court was making an application of these characteristics to the effects of an order for alimony; that it considered that the interest of the public was

in the case to the extent that if the sums provided to be paid to the wife were not vested the wife might become a public charge—and so the public was interested. In another case not cited in these conclusions, the court remarked that wives and storekeepers supplying food and clothing to a wife counted, and had a right to count, on the sums provided to be paid by the husband in an order for alimony *pendente life* as being vested. The other cited cases hold, generally speaking as to all, that an application for alimony pending suit is a proceeding for a judgment separate from, and independent of, the judgment of divorce, although it is not made in a separate suit; that it is not affected by the judgment of divorce, except only that the judgment of divorce fixes the date on and after which no further payments under the order need to be made, and that the judgment of divorce or a dismissal of the divorce action does not affect the liability to pay the amounts then due.